1  **WO**

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7                **FOR THE DISTRICT OF ARIZONA**

8

9  Patrick Dooley Harding,                    No. CV-16-00419-PHX-JAT

10            Plaintiff,                       **ORDER**

11  v.

12  Carolyn W. Colvin,

13            Defendant.

14

15        Pending before the Court is Plaintiff Patrick Dooley Harding's ("Plaintiff") appeal

16  from the Social Security Commissioner's ("Commissioner") denial of his application for

17  a period of disability, disability insurance benefits, and Supplemental Security Income

18  ("SSI") under the Social Security Act, 42 U.S.C. §§ 416(I), 432, 1381 et seq. (2012).[1]

19  (Doc. 1 at 2). Plaintiff argues that the Administrative Law Judge ("ALJ") erred in failing

20  to seek an updated medical opinion following the submission of probative evidence,

21  improperly rejecting the opinion of an examining psychologist, and improperly assessing

22

23        [1] While Plaintiff's application for Social Security benefits originated in Illinois, he
24  currently resides in Maricopa Commissioner, Arizona. (Doc. 1 at 3). Jurisdiction and venue
    under 42 U.S.C. § 405(g) is established "in the district court of the United States for the
25  judicial district in which the plaintiff resides." 42 U.S.C. § 405(g) (2012). If not timely
    raised, a party waives its opportunity to challenge venue. *See* Fed. R. Civ. P. 12(h)(1)
26  (stating that a party waives its ability to challenge venue in a 12(b)(3) motion to dismiss
    if not made in a responsive pleading or amendment); *Weinberger v. Salfi*, 422 U.S. 749,
27  764 (1975) (applying venue waiver to Social Security appeals). Because Defendant has
    not raised a challenge to venue in any responsive pleading or amendment, venue in the
28  District of Arizona is proper.

1  the credibility of Plaintiff's allegations. (Doc. 15 at 1). The Court now rules on Plaintiff's
2  appeal.

3  **I.    Background**

4      The parties are familiar with the background information in this case, and it is
5  summarized in the ALJ's decision. (*See* Doc. 14-3 at 23–34). Accordingly, the Court will
6  reference the background only as necessary to the decision below.

7  **II.   Legal Standard**

8      The ALJ's decision to deny benefits will be overturned "only if it is not supported
9  by substantial evidence or is based on legal error." *Magallanes v. Bowen*, 881 F.2d 747,
10  750 (9th Cir. 1989) (internal quotation omitted). "Substantial evidence" means "more
11  than a mere scintilla, but less than a preponderance." *Reddick v. Chater*, 157 F.3d 715,
12  720 (9th Cir. 1998) (internal citation omitted). In other words, substantial evidence means
13  "such relevant evidence as a reasonable mind might accept as adequate to support [the
14  ALJ's] conclusion." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir.
15  2009).

16      "The inquiry here is whether the record, read as a whole, yields such evidence as
17  would allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant v.
18  Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (internal citation omitted). In determining
19  whether there is substantial evidence to support a decision, the Court considers the
20  "record as a whole, weighing both the evidence that supports the ALJ's conclusions and
21  the evidence that detracts from the" ALJ's conclusions. *Reddick*, 157 F.3d at 720.
22  "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's
23  conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to
24  draw inferences logically flowing from the evidence." *Gallant*, 753 F.2d at 1453 (internal
25  citations omitted); *see Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193
26  (9th Cir. 2004). This is because "[t]he trier of fact and not the reviewing court must
27  resolve conflicts in the evidence, and if the evidence can support either outcome, the
28  court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d

1016, 1019 (9th Cir. 1992); *see Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before the Court, substantial evidence supports the Commissioner's decision and the decision is free from legal error, the Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g) (2012). On the other hand, the Court "may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation and citation omitted).

Notably, the Court is not charged with reviewing the evidence and making its own judgment as to whether Plaintiff is or is not disabled. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Rather, the Court's inquiry is constrained to the reasons asserted by the ALJ and the evidence relied upon in support of those reasons. *See id.* On appeal, "issues which are not specifically and distinctly argued and raised in a party's opening brief are waived." *Arpin v. Santa Clara Valley Trans. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (citing *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1110 n.1 (9th Cir. 2000) (en banc), *vacated and remanded on other grounds*, 535 U.S. 391 (2002)); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 n.7 (9th Cir. 2009) (applying the principle to Social Security appeal). The Ninth Circuit's reasoning is that courts "will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim." *Arpin*, 261 F.3d at 919 (internal citation omitted).

## A.   Definition of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show that, among other things, he is "under a disability." 42 U.S.C. § 423(a)(1)(E) (2012). The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A).

A person is "under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

### B.     The Five-Step Evaluation Process

To evaluate a claim of disability, the Social Security regulations set forth a five-step sequential process. 20 C.F.R. § 404.1520(a)(4) (2016); *see also Reddick*, 157 F.3d at 721. A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof through the first four steps, but the burden shifts to the Commissioner in the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows:

1. First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

2. If the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). To be considered severe, the impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are the "abilities and aptitudes to do most jobs," such as lifting, carrying, reaching, understanding, carrying out and remembering simple instructions, responding appropriately to co-workers, and dealing with changes in routine. *Id.* § 404.1521(b). Further, the impairment must either have lasted for "a continuous period of at least twelve months," be expected to last for such a period, or be expected "to result in death." *Id.* § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). If the claimant does not have a severe impairment, then the claimant is not disabled.

3. Having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments listed in the regulations. 20 C.F.R.

- 4 -

§ 404.1520(a)(4)(iii). If so, the claimant is found disabled without further inquiry. If not, before proceeding to the next step, the ALJ will make a finding regarding the claimant's "residual functional capacity based on all the relevant medical and other evidence in [the] case record." *Id.* § 404.1520(e). A claimant's "residual functional capacity" ("RFC") is the most he can still do despite all his impairments, including those that are not severe, and any related symptoms. *Id.* § 404.1545(a)(1).

4. At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." *Id.* § 404.1520(a)(4)(iv). To make this determination, the ALJ compares its "residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* § 404.1520(f). If the claimant can still perform the kind of work he previously did, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

5. At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. *Id.* § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's "residual functional capacity" and his "age, education, and work experience." *Id.* § 404.1520(g)(1). If the claimant can perform other work, he is not disabled. If the claimant cannot perform other work, he will be found disabled.

In evaluating the claimant's disability under this five-step process, the ALJ must consider all evidence in the case record. *See id.* §§ 404.1520(a)(3), 404.1520b. This includes medical opinions, records, self-reported symptoms, and third-party reporting. *See* 20 C.F.R. §§ 404.1527, 404.1529; SSR 06-3p, 71 Fed. Reg. 45593-03 (Aug. 9, 2006).

## C.     The ALJ's Evaluation Under the Five-Step Process

The ALJ found that Plaintiff had not engaged in substantial gainful activity for at least twelve continuous months and that he possessed several severe impairments,[2]

---

[2] The ALJ found that Plaintiff has the following severe impairments: gout, obstructive sleep apnea, thyroid disorder, morbid obesity, and learning disability. (Doc. 14-3 at 26). The ALJ also found that Plaintiff has a non-severe impairment as a result of his prior arthroscopic knee surgery. (*Id.*)

satisfying the first and second steps of the inquiry. (Doc. 14-3 at 26). Under step three, the ALJ determined that Plaintiff's impairment or combination of impairments did not meet or medically equal any of the listed impairments in the Social Security regulations that automatically result in a finding of disability. (*Id.*)

Prior to moving on to step four, the ALJ conducted an RFC determination in light of proffered testimony and objective medical evidence. (*Id.* at 28–29). The ALJ found that Plaintiff "has the residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(b) except [Plaintiff] can frequently stoop and occasionally balance, kneel, crouch, crawl and climb ramps or stairs but never ladders, ropes or scaffolds." (*Id.* at 28). Moreover, Plaintiff "can have occasional exposure to hazards such as moving machinery or unprotected heights." (*Id.*) The ALJ further found that Plaintiff "can perform unskilled work tasks that can be learned by demonstration with 30 days or less of a simple repetitive routine nature. He can have occasional superficial and incidental contact with the public and occasional contact with supervisors or coworkers." (*Id.*) Finally, the ALJ found that Plaintiff "could do jobs with occasional decision making, changes in the work setting, no fast-paced work and no strict production quotas but could meet goals." (*Id.*)

At step four, the ALJ found that Plaintiff was "unable to perform past relevant work." (*Id.* at 32). Finally, the ALJ determined at step five that based on Plaintiff's age, education, work experience, and RFC, Plaintiff could perform significant numbers of jobs existing in the national economy. (*Id.* at 34). Consequently, the ALJ found that Plaintiff was not disabled under the Social Security Act. (*Id.*)

### III.   Analysis

Plaintiff asserts that the ALJ erred in denying him benefits for three reasons: (1) the ALJ failed to seek an updated medical opinion following the submission of probative evidence; (2) the ALJ improperly rejected the opinion of an examining psychologist; and (3) the ALJ improperly assessed the credibility of Plaintiff's testimony. The Court will address each argument in turn.

### A.      Whether the ALJ Failed to Seek an Updated Medical Opinion

The Court first turns to Plaintiff's argument that the ALJ failed "to seek an updated medical opinion following the submission of probative evidence regarding psychological impairments and attendant limitations submitted after his hearing." (Doc. 15 at 1–2).

### 1.      Legal Standard

An ALJ has an independent duty in a Social Security case to "fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)) (internal citations omitted). Further, an ALJ must "conduct an appropriate inquiry" when there is ambiguous evidence or the ALJ finds "the record inadequate to allow for proper evaluation." *Id.* These duties apply regardless of whether the claimant is represented or unrepresented. *Id.* An "ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Id.*

To make an equivalency finding, the claimant's impairments, as established by "symptoms, signs and laboratory findings" must be "at least equal in severity and duration to the characteristics of a relevant listed impairment." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999) (citing 20 C.F.R. § 404.1526). An "ALJ may not make an equivalency finding without obtaining the opinion of a state agency medical or psychological consultant or an updated medical opinion from a medical expert." *Maffei v. Colvin*, No. 3:12-CV-01394-BR, 2013 WL 5102388, at *6 (D. Or. Sept. 12, 2013) (citing SSR 96-6p, 1996 WL 374180, at *4 (July 2, 1996)) (internal quotations omitted).

### 2.      Analysis

Plaintiff argues that because the record was further developed after the hearing to include new neuropsychological testing, the ALJ had a duty to seek an updated expert opinion by a state agency consultant on the issue of equivalency. (*See* Doc. 15 at 10–12).

At the March 2014 hearing, the ALJ, upon Plaintiff's request, left the record open. (Doc. 14-3 at 86–87). Plaintiff specifically requested the record to be left open because he wished to submit additional neuropsychological testing. (*Id.* at 42–44) The new neuropsychological testing, conducted by Pamela Murphy, Psy.D., ("Dr. Murphy"), concluded that Plaintiff "does not meet the diagnostic criteria for an intellectual impairment diagnosis as his scores are not two standard deviations below the average range," *but does meet* the diagnostic criteria for depressive disorder and an unspecified neurodevelopmental disorder. (Doc. 14-8 at 111). Dr. Murphy concluded that Plaintiff met the criteria for unspecified neurodevelopmental disorder because: he struggled particularly with adaptive living skills (e.g., "personal hygiene, household responsibilities, time management, finances, etc."); Plaintiff's functionality was "well below what would be expected for a same aged peer;" and Plaintiff has an "impairment in social, occupational, and other important areas of functioning." (*Id.* at 112).

Here, Plaintiff argues that Dr. Murphy's conclusions triggered the ALJ's obligation to develop the record further by obtaining a new, expert opinion prepared by a state agency consultant regarding the issue of equivalence. (Doc. 15 at 10–11). Defendant argues that the ALJ was not required to call a medical expert to make a "step three" equivalency finding. (Doc. 16 at 16). Rather, the ALJ "*may* ask for and consider opinions from medical experts." (*Id.* (quoting 20 C.F.R. § 404.1527(f)(2)(iii)) (emphasis added)). However, an ALJ "*must* obtain an updated medical opinion from a medical expert" when "additional medical evidence is received that in the opinion of the [ALJ] . . . may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." SSR 96-6p, 1996 WL 374180, at *4 (July 2, 1996) (emphasis added).

The Court finds that the ALJ's failure to seek an updated medical opinion by a state agency consultant was error. Dr. Murphy specifically stated that Plaintiff's unspecified neurodevelopmental diagnosis—distinct from intellectual impairment diagnosis—was an impairment that met the diagnostic criteria and that Plaintiff was

functioning well below that of his peers. (Doc. 14-8 at 112). Moreover, Dr. Murphy's description of Plaintiff's unspecified neurodevelopmental diagnosis tracks the language in the Social Security Administration's impairment listing. (*Id.*); *see also* 20 C.F.R. § 404, subpart P, app. 1, 12.01(B)(1)–(3) (2012) (describing difficulties with daily living, social functioning, and maintaining concentration, persistence, or pace). This diagnosis and the accompanying limitations described by Dr. Murphy are enough to create ambiguity regarding Plaintiff's prior equivalency evaluation and trigger the ALJ's responsibility to conduct further inquiry. *See Tonapetyan*, 242 F. 3d at 1150.

In step three, the ALJ does not explicitly mention the findings of Dr. Murphy or the effect of her findings on the state expert opinion on equivalency. *See Maffei*, No. 3:12-CV-01394-BR, 2013 WL 5102388, at *6 (citing SSR 96-6p, 1996 WL 374180, at *4) (reasoning an "ALJ may not make an equivalency finding without obtaining the opinion of a state agency medical or psychological consultant or an updated medical opinion from a medical expert."). Because the ALJ did not consider the new diagnoses when conducting her "step three" evaluation, she did not consider the entire record. (*Compare* Doc. 14-3 at 26–28 (where the ALJ evaluates whether Plaintiff can meet a listed impairment by fulfilling at least two of the following: "marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration persistence, or pace; or repeated episodes of decompensation;" or whether Plaintiff shows signs of an "inability to function outside a highly supporting living arrangement or that even a minimal increase in mental demands or change in the environment would be predicted to cause the claimant to decompensate"), *with* Doc. 14-8 at 112 (where Dr. Murphy describes Plaintiff's adaptive living skills, like maintaining personal hygiene, to be "well below" average and that Plaintiff has an impairment in "social, occupational, and other important areas of functioning")).

Moreover, the record is inadequate to evaluate the effect the unspecified neurological disorder might have on Plaintiff's ability to find work without an updated

expert opinion made by a state agency consultant. Accordingly, the ALJ committed legal error by not fulfilling her duty to develop the record by obtaining an additional expert opinion by a state agency consultant.

### B.   Whether the ALJ Improperly Rejected the Examining Psychologist's Opinion

Next, the Court turns to Plaintiff's argument that the ALJ "improperly rejected the opinion of examining psychologist, Dr. Murphy, when the ALJ summarily rejected the opinion as non-probative." (Doc. 15 at 1–2).

#### 1.   Legal Standard

The Ninth Circuit distinguishes between the opinions of three types of physicians: (1) those who treat the claimant ("treating physicians"); (2) those who examine but do not treat the claimant ("examining physicians"); and (3) those who neither examine nor treat the claimant ("non-examining physicians"). *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). As a general rule, the opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician, but less than a treating physician. *Andrews*, 53 F.3d at 1040–41.

An "ALJ must consider all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). And, "[a]lthough the ALJ is not bound by expert medical opinion on the issue of disability, [s]he must give clear and convincing reasons for rejecting such an opinion where it is uncontradicted." *Gallant*, 753 F.2d at 1454; *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). When an ALJ rejects the opinion of an examining physician, even if contradicted, the opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830–31; *see also Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006).

An "ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). However, "incongruity between [a doctor's opinion] and

[his] medical records" is a "specific and legitimate reason for rejecting" the doctor's opinion. *Tommasetti*, 533 F.3d at 1041.

When reviewing an ALJ's determination, the court must uphold an ALJ's decision—even if the ALJ could have been more specific in her opinion—if the court can reasonably infer if and why she rejected an opinion. *Magallanes*, 881 F.2d at 755; *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned.") (internal quotations omitted). Moreover, "if evidence exists to support more than one rational interpretation, [the court] must defer to the [ALJ's] decision" *Batson*, 359 F.3d at 1193; *see also Osenbrock v. Apel*, 240 F.3d 1157, 1162 (9th Cir. 2001).

### 2.    Analysis

Plaintiff argues that the ALJ improperly rejected examining psychologist's opinions because "she failed to cite convincing or legitimate reasons for doing so." (Doc. 15 at 12–13).

Here, the ALJ gave the examining physician's opinion "little weight even though it suggests an ability to do simple work." (Doc. 14-3 at 32). The ALJ concluded that "claimant had no prior mental health evaluations and this one administered at age 29 has limited probative value." (*Id.*) Instead, the ALJ found the "evidence in the claimant's own report of ability to drive, care for animals, take a vacation, move furniture, drive out-of-State and play video games" more persuasive. (*Id.*)

Defendant argues that the ALJ never actually rejected Dr. Murphy's opinion because she incorporated the assessed limitations in her residual functional capacity finding. (Doc. 16 at 11–12); *see also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222–23 (9th Cir. 2010); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) ("[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony."). Specifically, Defendant argues that Dr. Murphy's

recommendation of "routine and structured activities" and "job tasks that do not require prompt delivery of services or speed in completion," (Doc. 14-3 at 112), were incorporated into the residual functional capacity finding limiting "Plaintiff to 'unskilled work tasks . . . of a simple repetitive routine nature' and only 'occasional' decision-making, with 'no fast-paced work and no strict production quotas.'" (Doc. 16 at 12 (quoting Doc. 14-3 at 28)). In response, Plaintiff argues that the ALJ would not have given Dr. Murphy's opinion "little weight" if she had in fact adopted it. (Doc. 17 at 6).

The ALJ acknowledges some of the limitations observed by Dr. Murphy, (e.g., Plaintiff's global assessment of functioning score, IQ score, etc.), but not all of the limitations observed by Dr. Murphy, (e.g., unspecified neurological disorder diagnosis), calling into question whether the ALJ actually rejected or incorporated Dr. Murphy's opinion. (*See* Doc. 14-3 at 30–32). Moreover, the ALJ never referenced Dr. Murphy's opinion in her "step three" equivalency analysis. Thus, the Court concludes that it is at least ambiguous as to whether the ALJ rejected or incorporated Dr. Murphy's examination into her opinion. Therefore, her reasoning does not even meet the specific and legitimate standard required to reject an examining doctor's opinion. *See Lester*, 81 F.3d at 830–31. It is the ALJ's responsibility to resolve ambiguity in medical testimony, *see Andrews*, 53 F.3d at 1039, not create ambiguity; and the Court is unable to reasonably infer whether or not the ALJ rejected Dr. Murphy's opinion. Because the Court has already found that additional development of the record is necessary, the ALJ shall also, in more specific language, determine whether she is incorporating or rejecting the opinion of the examining psychologist Dr. Murphy. [3]

_____

[3] Plaintiff first argues that the ALJ rejected Dr. Murphy's opinion and the reasons set forth by the ALJ are "neither convincing nor legitimate," and that the Plaintiff's timing of the assessment (at age 29) should not determine that the examination is "devoid of probative value" for the period of disability. (Doc. 15 at 13–14). Moreover, Plaintiff argues that the "ALJ cited no evidence or authority supporting her conclusion that an in-depth neuropsychological assessment is irrelevant to the evaluation of the nature and severity of [Plaintiff's] neurodevelopmental impairment." (*Id.*) Plaintiff explains that any inconsistency between Dr. Murphy's opinion and the ALJ's findings is due to the ALJ's interpretation of Plaintiff's IQ scores, which in turn is an improper substitution of an ALJ's opinion for a physician's opinion. (Doc. 17 at 7). However, because the ALJ does not clearly reject or incorporate Dr. Murphy's opinion, the Court will not rule on these

- 12 -

1   **C.      Whether the ALJ Improperly Discredited Plaintiff's Testimony**

2         Finally, the Court addresses Plaintiff's argument that the ALJ "improperly

3   assessed the credibility of Plaintiff's allegations" with "legally, factually, and logically

4   flawed" reasoning, (Doc. 15 at 1–2), when the ALJ concluded that Plaintiff's testimony

5   was "not entirely credible." (Doc. 14-3 at 29).

6                    **1.      Legal Standard**

7         An ALJ must engage in a two-step analysis to determine whether a claimant's

8   testimony regarding subjective symptoms is credible.[4] *Molina*, 674 F.3d at 1112. First, as

9   a threshold matter, "the ALJ must determine whether the claimant has presented

10  objective medical evidence of an underlying impairment 'which could reasonably be

11  expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504

12  F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir.

13  1991)). Second, if the claimant meets the first test, then "the ALJ 'may not discredit a

14  claimant's testimony of pain and deny disability benefits solely because the degree of

15  pain alleged by the claimant is not supported by objective medical evidence.'" *Orteza v.

16  Shalala*, 50 F.3d 748, 749–750 (9th Cir. 1995) (quoting *Bunnell*, 947 F.2d at 346–47).

17  Rather, "unless an ALJ makes a finding of malingering based on affirmative evidence

18  thereof," the ALJ may only find the claimant not credible by making specific findings

19  supported by the record that provide clear and convincing reasons to explain her

20  credibility evaluation. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)

21  (citing *Smolen*, 80 F.3d at 1283–84); *see Lingenfelter*, 504 F.3d at 1036. To make

22  specific findings, "the ALJ must identify what testimony is not credible and what

23  evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834 (reasoning that

24

25  arguments.

26       [4] Although SSR 96-7p was superseded by SSR 16-3p (eliminating the term
    "credibility analysis"), SSR 16-3p has an effective date of March 16, 2016. SSR 16-3p,
27  2016 WL 1119029, at *1 (Mar. 16, 2016). However, Plaintiff's Social Security hearing
    occurred before the effective date on March 12, 2014. Accordingly, the Court will use
28  SSR 96-7p as guidance when evaluating Plaintiff's subjective reports of symptoms. As
    such, Plaintiff's concern expressed in his Reply Brief, (Doc. 17 at 5 n.1), lacks merit.

"[g]eneral findings are insufficient").

In rendering a credibility determination the ALJ may consider several factors, including "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti*, 533 F.3d at 1039 (quoting *Smolen*, 80 F.3d at 1284). If the ALJ relies on these factors and her reliance is supported by substantial evidence, the Court "'may not engage in second-guessing.'" *Id.* (quoting *Thomas*, 278 F.3d at 959). Other factors that an ALJ may consider when determining the credibility of a claimant's symptoms include: location, duration, frequency, and intensity of symptoms; precipitating and aggravating factors; medications taken; treatments for symptom relief; any other measures for pain relief; and any other factors concerning the individual's impairment due to pain or other symptoms. *See* SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996).

### 2.    Analysis

In this case, the ALJ determined that Plaintiff presented credible medical evidence from which "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," (Doc. 14-3 at 29), fulfilling step one of the credibility analysis. Moreover, the ALJ made no apparent finding of malingering based on the affirmative evidence. *See Robbins*, 466 F.3d at 833 (citation omitted). However, the ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Doc. 14-3 at 29). The ALJ's credibility decision must be supported by "clear and convincing reasons to explain her credibility evaluation." *Robbins*, 466 F.3d at 833 (citation omitted).

Plaintiff argues that the ALJ's credibility analysis is not supported by substantial evidence and her reasoning is "legally, factually, and logically flawed." (Doc. 15 at 14).

Specifically, Plaintiff argues that the ALJ erred in her reliance on Plaintiff's daily activities, the nature of his medical treatment, and his work history," as factors contributing to adverse credibility. (*Id.* at 14–15). The Court will analyze each argument in turn.

### a.    Daily Activities

One factor the ALJ relied upon in her credibility evaluation was Plaintiff's ability to engage in daily activities. (Doc. 14-3 at 30). Plaintiff argues that the ALJ's reliance on minimal activities like doing "chores, attend[ing] to hygiene, prepar[ing] meals, shop[ping], driv[ing] a car, car[ing] for his family's animals, and travel[ing] out of state" constitutes error. (Doc. 15 at 16).

The Ninth Circuit has long held it appropriate to consider a claimant's engagement in daily activities as a factor in assessing witness credibility. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). While a claimant need not "vegetate in a dark room" to be eligible for benefits, *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (internal quotation omitted), an "ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." *Molina*, 674 F.3d at 1113 (citing *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)). Moreover, even if the daily activities undertaken by the claimant "suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id.* (citing *Turner*, 613 F.3d at 1225).

Here, the ALJ concluded that Plaintiff was "partially credible for activities of daily living that are somewhat limited" and that his daily activities "tend[] to suggest that his alleged symptoms and limitations may have been overstated." (Doc. 14-3 at 30). Specifically, Plaintiff's testimony that his symptoms prevented him from working was partially undermined by his ability to: (1) "do occasional household chores," (2) maintain personal hygiene, (3) shop for and prepare meals, (4) drive with "sufficient concentration," (5) watch television and play video games with "sufficient

concentration," (6) "care for horses and animals at home at a regular pace, on a set schedule with only having knee-related problems in cold temperatures;" (7) travel to Arizona and on a cruise, (8) attend community college, and (9) hold jobs. (Doc. 14-3 at 30).

The Court finds that the ALJ was reasonable in concluding that "[a]lthough [Plaintiff's] activities and a disability are not necessarily mutually exclusive, his decision to do them tends to suggest that his alleged symptoms and limitations may have been over stated." (Doc. 14-3 at 30). This conclusion is adequately supported by the ALJ's clear and convincing connection between activities undertaken and perceived severity of Plaintiff's disability.

Plaintiff takes particular issue with the ALJ's reliance on his "decision to do" activities, arguing that attempting to live a normal life should not factor into a credibility decision. (Doc. 15 at 16). Although Plaintiff and his father testified to the difficulty that Plaintiff has with completing daily activities without help from others, (Doc. 15 at 17–18),[5] and the ALJ's interpretation of their testimony might not be the only reasonable interpretation, it is still a reasonable interpretation that is supported by substantial evidence. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Matthews v. Shalala*, 10 F.3d 678, 679–80 (9th Cir. 1993) (upholding ALJ's rejection of claimant's subjective complaints where ALJ found that claimant's performance of daily activities like housecleaning, light gardening, and shopping undermined claimant's assertion of disabling pain). Accordingly, the ALJ did not err when discounting Plaintiff's testimony because of his daily activities.

---

[5] The ALJ tends to overstate Plaintiff's ability and skill in completing certain daily activities. For example, Plaintiff forgets to shower and change his clothes without reminder and often refuses to brush his teeth, comb his hair, or shave his face, (Doc. 14-7 at 44–43); Plaintiff requires supervision and constant reminders to complete household chores like mowing the lawn over the course of two days, or taking out the trash, (Doc. 14-7 at 32, 44); Plaintiff cannot manage his own finances, requiring help from his parents to manage his money and pay bills, (Doc. 14-7 at 33, 45); and Plaintiff's unsuccessful care of his family's pets resulted in lost or deceased pets, (Doc. 14-3 at 66). While the record reflects the difficulty Plaintiff experiences while completing these activities, they fall short of establishing a "totally debilitating impairment." *See Morgan*, 169 F.3d at 600. Accordingly, the Court will defer to the ALJ's interpretation.

### b.   Medical Treatment

Another factor relied upon by the ALJ in her credibility determination was Plaintiff's limited medical treatment, specifically relating to his mental health issues. (Doc. 15 at 18). Plaintiff argues that although his mental health treatment was limited, it was limited because "he could not afford treatment and did not have insurance," and thus the ALJ's reliance on this limited treatment constitutes legal error. (*Id.*)

An ALJ may "consider lack of treatment in [her] credibility determination." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The Ninth Circuit has noted a number of times that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)). If a claimant fails to seek treatment, that failure can only be discredited if unexplained or inadequately explained. *Smolen*, 80 F.3d at 1284. Moreover, should a claimant provide "evidence of a good reason for not taking medication for her symptoms, her symptom testimony cannot be rejected for not doing so." *Id.* at 1284 (finding not having a job, and accordingly not having insurance was a good reason for not seeking medical treatment).

The ALJ concluded that Plaintiff's limited mental health treatment—"not tak[ing] any medications since" childhood and a lack of recent treatment—"is not generally what one would expect for a disabled individual." (Doc. 14-3 at 31). However, Plaintiff provided an explanation for the lack of treatment: he could not afford treatment while uninsured. (Doc. 14-3 at 42–43; Doc. 14-7 at 37, 49; Doc. 14-8 at 105, 107). The Ninth Circuit has explicitly "proscribed the rejection of a claimant's complaints for lack of treatment when the record establishes that the claimant could not afford it." *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999) (citing *Smolen*, 80 F.3d at 1284); *see also Gamble v. Chater*, 68 F.3d 319, 322 (9th Cir. 1995) ("It flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him.") (quoting *Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984)). Accordingly, the ALJ's reliance on

1    Plaintiff's lack of mental health treatment was error.

2                           c.      **Work History**

3           Another factor relied upon by the ALJ in her credibility determination was

4    Plaintiff's work history. (Doc. 14-3 at 31). Plaintiff argues that the ALJ's credibility

5    determination based in part on his work history is flawed. (Doc. 15 at 19). First, Plaintiff

6    argues that his attendance related issues resulting in termination were directly related to

7    his impairment. (*Id.*) Plaintiff suffers "deficits in adaptive functioning" which "preclude

8    [him from] functioning outside of a rigid, structured routine," and when his employer

9    frequently changed his schedule, Plaintiff showed up late as a function of his poor

10   adaptive functioning skills. (*Id.*) Second, Plaintiff argues that the ALJ's adverse

11   credibility finding based on Plaintiff's past terminations from employment is in conflict

12   with her holding that Plaintiff "is unable to perform any past relevant work." (Doc. 14-3

13   at 32; Doc. 15 at 19).

14          An ALJ may consider a Plaintiff's work history when evaluating his credibility.

15   *See Thresher v. Astrue*, 283 F. App'x 473, 475 (9th Cir. 2008); *Thomas*, 278 F.3d at 959

16   (holding that the ALJ's adverse credibility finding was valid when it considered in part

17   Plaintiff's "extremely poor work history"); *see also Greger v. Barnhart*, 464 F.3d 968,

18   972 (9th Cir. 2006) (holding that the ALJ's adverse credibility finding was valid when it

19   considered in part Plaintiff's "under the table" work commensurate with past

20   employment). *But see Smolen*, 80 F.3d at 1285 (holding that the ALJ erred in discrediting

21   plaintiff's subjective pain testimony by allowing evidence "including her work history;

22   lay testimony from family members regarding her daily activities at home and her ability

23   to function at school; observations of high school guidance counselor regarding her

24   energy level in school; and opinions and observations from treating and examining

25   physicians" to outweigh a lack of medical documents).

26          The ALJ concluded that Plaintiff "worked after the alleged onset date at levels

27   commensurate with substantial gainful activity, which indicates that his daily activities

28   have been somewhat greater than he has generally reported." (Doc. 14-3 at 31). The ALJ

relied upon Plaintiff's testimony that he was terminated because of "attendance-related issues and not his allegedly disabling impairments." (*Id.*) The ALJ further reasoned that Plaintiff "did the work satisfactorily and looked for work after recover from knee surgery, which suggest he felt he had the ability to work" while "currently alleg[ing] an inability to work during the same period, which brings into question the reliability of his allegations generally." (*Id.*)

Defendant argues that it was reasonable for the ALJ to "discount [Plaintiff's] subjective complaints of disabling symptoms if the record evidence shows the claimant was able to continue his past work activities." (Doc. 16 at 8 (quoting *Greger*, 464 F.3d at 972) (internal quotations omitted)). Defendant relies upon the Plaintiff's established employment with income exceeding the substantial gainful activity threshold to contradict his "allegations of disabling mental impairment." (*Id.*) The Court agrees. Although it is reasonable to conclude that Plaintiff was dismissed from his prior jobs because of his disability, it is not the only reasonable conclusion. *See Rollins*, 261 F.3d at 857. Accordingly, the ALJ gave specific and cogent reasons for considering work history as a part of its adverse credibility finding and the Court will defer to her reasoning.

### 3.    Conclusion

Despite deferring to the ALJ's reasoning for discrediting Plaintiff's testimony based on his daily activities and work history, the ALJ erred in her credibility determination by relying upon Plaintiff's past treatment history. The record reflects that Plaintiff could not afford treatment, providing an adequate reason for failing to seek treatment. *See Smolen*, 80 F.3d at 1284. Accordingly, the ALJ erred in part in discrediting Plaintiff's subjective symptom testimony. *See also Regennitter*, 166 F.3d at 1297.

### D.    Remand

Specific to Social Security disability actions, the Court must analyze the error "in light of the circumstances of the case." *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011). "[E]rrors are harmless if they are 'inconsequential to the ultimate nondisability determination," and the Court may not "set aside the denial of a disability claim unless

'the [Commissioner's] findings are not supported by evidence *in the record as a whole*." *Molina*, 674 F.3d at 1121 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008); *Stone v. Heckler*, 761 F.2d 530, 531 (9th Cir. 1985)) (emphasis in original). The ALJ's reasoning regarding Dr. Murphy's diagnosis and Plaintiff's testimony is erroneous, and these errors are integral to the fair determination of benefits. In other words, Dr. Murphy's new diagnostic finding and the ALJ's misplaced reliance on Plaintiff's past treatment history introduce doubt to the equivalence finding and Plaintiff's credibility. Resolution of the ALJ's errors in reasoning is decisive when determining if Plaintiff's is disabled. Thus, the ALJ committed harmful error.

Having found that the ALJ committed harmful error, the Court has discretion to remand the case for further development of the record or for an award of benefits. *Reddick*, 157 F.3d at 728. "The district court should credit evidence that was rejected during the administrative process and remand for an immediate award of Social Security disability benefits if: (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Benecke v. Barnhart*, 379 F.3d 587, 593, (9th Cir. 2004). Even assuming that the three elements of the Ninth Circuit's "credit-as-true rule" are satisfied, the doctrine "envisions 'some flexibility.'" *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (quoting *Connett*, 340 F.3d at 876). The Ninth Circuit has explained that this flexibility "is properly understood as requiring courts to remand for further proceedings when . . . an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id.* at 1021.

Considering "whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules," the Court finds that "further administrative proceedings would be useful." *Treichler v. Comm'r of Soc. Sec.*

*Admin.*, 775 F.3d 1090, 1103–04 (9th Cir. 2014) (citation omitted). Thus, a remand for further proceedings, to specifically develop the record to include a new state agency consultant expert opinion reflecting Dr. Murphy's diagnosis, to make specific findings on Dr. Murphy's *entire* diagnosis, and to evaluate Plaintiff's credibility without reference to inappropriate reasons, are appropriate in this case.

**IV.    Conclusion**

For the reasons stated above,

**IT IS ORDERED** that the Commissioner's decision denying benefits is **VACATED**, and the case is **REMANDED** to the agency for further proceedings. The Clerk of the Court shall enter judgment accordingly.[6]

Dated this 9th day of November, 2016.

James A. Teilborg
Senior United States District Judge

---

[6] To the extent a mandate is required, the judgment shall serve as the mandate in this case.